ıIN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHISN DISTRICT OF ALABAMA
SOUTHISN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | **CRIMINAL NO. 20-00122-TFM** |
| | ) | |
| JIMMY EARL CONNER | ) | |

**PLEA AGREEMENT**

The defendant, **JIMMY EARL CONNER**, represented by his counsel, and the United

States of America, have reached a plea agreement in this case, pursuant to Rule 11 of the Federal

Rules of Criminal Procedure, the terms and conditions of which are as follows:

**RIGHTS OF THE DEFENDANT**

1.   The defendant understands his rights as follows:

    a.   To be represented by an attorney;

    b.   To plead not guilty;

    c.   To have a trial by an impartial jury;

    d.   To confront and cross-examine witnesses and to call witnesses and

        produce other evidence in his defense; and

    e.   To not be compelled to incriminate himself.

**WAIVER OF RIGHTS AND PLEA OF GUILTY**

2.   The defendant waives rights b through e, listed above, and pleads guilty to Count

One of the Indictment, charging a violation of Title 21, United States Code,

Section 846, Conspiracy to Possess with Intent to Distribute Heroin.

3.   The defendant understands that the statements he makes under oath in the plea of

guilty must be completely truthful and that he can be prosecuted for making false

statements or perjury, or receive a perjury enhancement at sentencing, for any false statements he makes intentionally in this plea of guilty.

4.   The defendant expects the Court to rely upon his statements here and his response to any questions that he may be asked during the guilty plea hearing.

5.   The defendant is not under the influence of alcohol, drugs, or narcotics. He is certain that he is in full possession of his senses and is mentally competent to understand this Plea Agreement and the guilty plea hearing which will follow.

6.   The defendant has had the benefit of legal counsel in negotiating this Plea Agreement. He has discussed the facts of the case with his attorney, and his attorney has explained to the defendant the essential legal elements of the criminal charge which has been brought against him. The defendant's attorney has also explained to the defendant their understanding of the United States' evidence and the law as it relates to the facts of his offense.

7.   The defendant understands that the United States has the burden of proving each of the legal elements of the criminal charge beyond a reasonable doubt. The defendant and his counsel have discussed possible defenses to the charge. The defendant believes that his attorney has represented him faithfully, skillfully, and diligently, and he is completely satisfied with the legal advice of his attorney.

8.   A separate document, entitled Factual Resume, will be submitted to the Court as evidence at the guilty plea hearing. The Factual Resume is incorporated by reference into this Plea Agreement. The defendant and the United States agree that the Factual Resume is true and correct. Alterations to the Plea Agreement or

Factual Resume initialed only by the defendant and his counsel are not part of this agreement and are not agreed to by the United States.

9.     This plea of guilty is freely and voluntarily made and is not the result of force, threats, promises, or representations, apart from those representations set forth in this Plea Agreement.  There have been no promises from anyone as to the particular sentence that the Court will impose.  The defendant is pleading guilty because he is guilty.

10.    The defendant also knowingly and voluntarily waives all rights, whether asserted directly or through a representative, to receive from the United States after sentencing any further records, reports, or documents pertaining to the investigation or prosecution of this matter.  This waiver includes, but is not limited to, rights under the Freedom of Information Act and the Privacy Act of 1974.

## PENALTIES

11.    The maximum penalty the Court could impose as to Count One of the Indictment is:

a.     5 years mandatory minimum to 40 years imprisonment;

b.     A fine not to exceed $5,000,000;

c.     A mandatory minimum term of supervised release of four (4) years up to lifetime supervised released, which would follow any term of imprisonment.  If the defendant violates the conditions of supervised release, he could be imprisoned for the entire term of supervised release;

d.     A mandatory special assessment of $100.00; and

e.     Such restitution as may be ordered by the Court.

## SENTENCING

12.     The Court will impose the sentence in this case.  The United States Sentencing

Guidelines are advisory and do not bind the Court.  The defendant has reviewed

the application of the Guidelines with his attorney and understands that no one

can predict with certainty what the sentencing range will be in this case until after

a pre-sentence investigation has been completed and the Court has ruled on the

results of that investigation.  The defendant understands that at sentencing, the

Court may not necessarily sentence the defendant in accordance with the

Guidelines.  The defendant understands that he will not be allowed to withdraw

his guilty plea if the advisory guideline range is higher than expected, or if the

Court departs or varies from the advisory guideline range.

13.     The defendant understands that this Plea Agreement does not create any right to

be sentenced in accordance with the Sentencing Guidelines, or below or within

any particular guideline range, and fully understands that determination of the

sentencing range or guideline level, or the actual sentence imposed, is solely the

discretion of the Court.

14.     The United States will provide all relevant sentencing information to the

Probation Office for purposes of the pre-sentence investigation.  Relevant

sentencing information includes, but is not limited to, all facts and circumstances

of this case and information concerning the defendant's conduct and background.

15.     Both the defendant and the United States are free to allocute fully at the time of

sentencing.

16.    The defendant agrees to tender $100.00 to the U.S. District Court Clerk in satisfaction of the mandatory special assessment in this case. The United States reserves the right to withdraw any favorable recommendations it may agree to within this document if the defendant fails to pay the special assessment prior to or at the time of his sentencing.

## RESTITUTION

17.    Pursuant to 18 U.S.C. §§ 3556 and 3663(A), restitution is mandatory. The defendant agrees to make full restitution in an amount to be determined by the Court at sentencing as to all relevant conduct regardless of whether it relates to the count of conviction.

## FORFEITURE

18.    The defendant agrees to confess the forfeiture to the United States of all properties which represent proceeds of his criminal activities or which facilitated any aspect of these illegal activities.

## FINANCIAL OBLIGATIONS

19.    The Defendant expressly authorizes the U.S. Attorney's Office to obtain a credit report in order to evaluate the Defendant's ability to satisfy any financial obligation imposed by the Court. In order to facilitate the collection of financial obligations to be imposed in connection with this prosecution, the Defendant agrees to disclose fully all assets in which the Defendant has any interest or over which the Defendant exercises control, directly or indirectly, including those held by a spouse, nominee or other third party.

## UNITED STATES' OBLIGATIONS

20. The United States will not bring any additional charges against the defendant related to the facts underlying the Indictment and will move to dismiss any remaining charges against the defendant once sentence is imposed in this case. This agreement is limited to the United States Attorney's Office for the Southern District of Alabama and does not bind any other federal, state, or local prosecuting authorities.

21. The United States will recommend to the Court that the defendant be sentenced at the low end of the advisory sentencing guideline range per count of conviction as determined by the Court.

## APPLICATION OF USSG § 5K1.1 AND/OR FED. R. CRIM. P. 35

22. The defendant understands and agrees that he has no right to cooperate, and that the decision whether to allow him to cooperate is reserved solely to the United States in the exercise of its discretion. If the United States agrees to allow the defendant to cooperate, and if the defendant agrees to cooperate, the following terms and conditions apply:

   a. The defendant shall fully, completely, and truthfully respond to all questions put to his by law enforcement authorities regarding the underlying facts of the offense(s) with which he is charged, as well as the underlying facts of any criminal offense(s), state or federal, of which he has information or knowledge.

   b. The defendant acknowledges that he understands that he shall provide truthful and complete information regarding any offense about which he

has knowledge or information regardless of whether law enforcement authorities question his specifically about any such offense. This provision requires the defendant to divulge all information available to him even when law enforcement authorities do not know about the defendant's involvement, knowledge or information relating to any particular offense. This requirement extends to any and all persons about whom the defendant has such knowledge or information.

c. The defendant agrees to cooperate completely with all law enforcement authorities in any matters to which his cooperation may be deemed relevant by any law enforcement authority. The defendant agrees to fully comply with all instructions from law enforcement authorities regarding the specific assistance he shall provide. This includes, but is not limited to, consenting to monitored and/or recorded telephone conversations, participating in undercover operations, testifying completely and truthfully before any grand jury, at any pre-trial proceeding, during any trial, and any post-trial proceeding.

d. If the United States deems it necessary, the defendant may be required to take a polygraph examination(s) which will be administered by a government polygrapher. The defendant agrees that the results of any polygraph examination may be used by the United States in its evaluation of whether there has been substantial assistance, and are admissible at sentencing to rebut an assertion by the defendant of bad faith or unconstitutional motive on the part of the United States.

e. The defendant agrees to turn over to the United States any and all documents, tapes and other tangible objects which are in his possession or under his control and which are relevant to his participation in and knowledge of criminal activities, regardless of whether it relates to the charged offense. This obligation is a continuing one and includes materials that the defendant may acquire, obtain or have access to after the execution of this agreement.

f. The defendant also agrees to identify the assets of any other person which were obtained through or facilitated the defendant's illegal activities or the illegal activities of another.

g. If the defendant provides full, complete, truthful and substantial cooperation to the United States, which results in substantial assistance to the United States in the investigation or prosecution of another criminal offense, a decision specifically reserved by the United States in the exercise of its sole discretion, then the United States agrees to move for a downward departure in accordance with Section 5K1.1 of the United States Sentencing Guidelines or Rule 35 of the Federal Rules of Criminal Procedure, whichever the United States deems applicable. The United States specifically reserves the right to make the decision relating to the extent of any such departure request made under this agreement based upon its evaluation of the nature and extent of the defendant's cooperation. The defendant understands that the United States will make no representation or promise with regard to the exact amount of reduction, if

any, the United States might make in the event that it determines that the defendant has provided substantial assistance. The defendant understands that a mere interview with law enforcement authorities does not constitute substantial assistance. The defendant also understands that, should he provide untruthful information to the United States at any time, or fail to disclose material facts to the United States at any time, or commits a new criminal offense, the United States will not make a motion for downward departure. If the defendant's effort to cooperate with the United States does not amount to substantial assistance as determined solely by the United States, the United States agrees to recommend that the defendant receive a sentence at the low end of the advisory guideline range.

h. The United States and the defendant agree that any breach of this agreement by the defendant, including but not limited to committing a new offense, failing to cooperate, intentionally withholding information, giving false information, committing perjury, failing to identify assets obtained by him from his illegal activities or obtained by others associated with him or of which he has knowledge, refusing to take a polygraph examination, failing a polygraph examination, or refusing to testify before the grand jury or at any judicial proceeding, would:

    1.   permit the United States to reinstate and proceed with prosecution on any other charges arising from the matters underlying the Indictment; and

2.  permit the United States to initiate and proceed with the prosecution on any other charges arising from a breach of this agreement.  The United States will not be limited, in any respect, in the use it may make against the defendant of any information provided by the defendant during his breached cooperation.  Such breach will constitute a waiver of any claim the defendant could make under the United States Constitution, the Federal Rules of Evidence, the Federal Rules of Criminal Procedure, or any statute or case law by which the defendant seeks to suppress the use of such information or any evidence derived from such information.

i.  Nothing in this agreement shall protect the defendant in any way from prosecution for any offense committed after the date of this agreement, including perjury, false declaration, false statement, and obstruction of justice, should the defendant commit any of these offenses during his cooperation.  The defendant acknowledges and agrees that the information that he discloses to the United States pursuant to this agreement may be used against him in any such prosecution.

j.  The United States and the defendant agree that the defendant will continue his cooperation even after he is sentenced in the instant matter.  His failure to continue his cooperation will constitute a breach of this agreement, and the defendant agrees that under such conditions, the United States will be

free to reinstate the charges and the prosecution of the charges in the

Indictment, which are to be dismissed in accordance with this agreement.

Under these circumstances, the defendant expressly waives any rights he

may have under the statute of limitations and the speedy trial provisions.

## LIMITED WAIVER OF RIGHT TO APPEAL AND
## WAIVER OF COLLATERAL ATTACK

23.        As part of the bargained-for exchange represented in this plea agreement, and

subject to the limited exceptions below, the defendant knowingly and voluntarily

waives the right to file any direct appeal or any collateral attack, including a motion

to vacate, set aside, or correct sentence under 28 U.S.C. § 2255.  Accordingly, the

defendant will not challenge his guilty plea, conviction, or sentence in any district

court or appellate court proceedings.

          a.        **EXCEPTIONS.** The defendant reserves the right to timely

file a direct appeal challenging:

          (1)        any sentence imposed in excess of the statutory

maximum;

          (2)        any sentence which constitutes an upward departure

or variance from the advisory guideline range.

The defendant also reserves the right to claim ineffective assistance of

counsel in a direct appeal or § 2255 motion.

24.     If the United States files a notice of appeal and such appeal is authorized by the

Solicitor General, the defendant is released from the appellate waiver.

25.    The defendant further reserves the right to timely move the district court for an amended sentence under 18 U.S.C. § 3582 in the event of a future retroactive amendment to the Sentencing Guidelines which would affect the sentence.

26.    If the defendant receives a sentence within or below the advisory guideline range, this plea agreement shall serve as the defendant's express directive to defense counsel to timely file a "Notice of Non-Appeal" following sentencing, signed by the defendant.

## VIOLATION OF AGREEMENT

27.    The defendant understands that if he breaches any provision of this Plea Agreement, the United States will be free from any obligations imposed by this agreement, but all provisions of the agreement remain enforceable against the defendant.  In the exercise of its discretion, the United States will be free to prosecute the defendant on any charges of which it has knowledge.  In such event, the defendant agrees not to assert any objections to prosecution that he might have under the Sixth Amendment and/or Speedy Trial Act.

28.    In addition, if the defendant is released from detention prior to sentencing, he understands that the United States will no longer be bound by this agreement if he violates any condition of his release prior to sentencing or prior to serving his sentence after it is imposed.

## ENTIRETY OF AGREEMENT

29.     This document is the complete statement of the agreement between the defendant

30.     and the United States and may not be altered unless done so in writing and signed

31.         by all the parties.

Respectfully submitted,

RICHARD W. MOORE
UNITED STATES ATTORNEY

Date:_February 8, 2021__                /s/George F. May
                                        GEORGE F. MAY
                                        Assistant United States Attorney

Date:  February 8, 2021__               /s/ George A. Martin
                                        GEORGE A. MARTIN
                                        Assistant United States Attorney
                                        Deputy Chief, Criminal Division

I have consulted with my counsel and fully understand all my rights with respect to the

offense charged in the Indictment pending against me.  I have read this Plea Agreement and

carefully reviewed every part of it with my attorney.  I understand this agreement, and I

voluntarily agree to it.  I hereby stipulate that the Factual Resume, incorporated herein, is true

and accurate in every respect, and that had the matter proceeded to trial, the United States could

have proved the same beyond a reasonable doubt.

Date: 2-8-2021                          _____
                                        JIMMY EARL CONNER
                                        Defendant

I am the attorney for the defendant. I have fully explained his rights to his with respect to the offense(s) charged in the Indictment in this matter. I have carefully reviewed every part of this Plea Agreement with his. To my knowledge, his decision to enter into this agreement is an informed and voluntary one. I have carefully reviewed the Factual Resume, incorporated herein, with the defendant and to my knowledge, his decision to stipulate to the facts is an informed, intelligent and voluntary one.

Date: 2-8-702,

_____
JUDSON ERIC CRUMP
Attorney for Defendant

2IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHISN DISTRICT OF ALABAMA
SOUTHISN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CRIMINAL NO. 20-00122-TFM |
| | ) | |
| JIMMY EARL CONNER | ) | |

## FACTUAL RESUME

The defendant, **JIMMY EARL CONNER**, admits the allegation of Count One of the

Indictment.

## ELEMENTS OF THE OFFENSE

**JIMMY EARL CONNER** understands that in order to prove violation of Title 21,

United States Code, Section 846, as charged in Count One of the Indictment, the United States

must prove:

1.  That two or more persons in some way or manner, came to a mutual

    understanding to distribute heroin, or to possess heroin with intent to distribute it;

2.  That the defendant knowingly and willfully became a member of such conspiracy.

## OFFENSE CONDUCT

Defendant, **JIMMY EARL CONNER**, admits in open court and under oath that the

following statement is true and correct and constitutes evidence in this case.  This statement of

facts is provided solely to assist the Court in determining whether a factual basis exists for

**JIMMY EARL CONNER's** plea of guilty.  The statement of facts does not contain each and

every fact known to the defendant and to the United States concerning the defendant's

involvement in the charges set forth in the plea agreement.

1

In 2017 **JIMMY EARL CONNER** was addicted to opioid based pills and began purchasing opioid based prescription pills from the co-defendant Martin MELTON, aka "MC". **JIMMY EARL CONNER** would purchase approximately $200 - $300 worth of pills from MELTON each time he purchased the pills.  CONNOR also made one drug purchase from Adam Joseph OWENS aka: "AJ", buying one blue 30mg Roxicodone pill from AJ. MELTON introduced **JIMMY EARL CONNER** to the co-defendant Edwin Jerome OWENS, aka "EJ" and **CONNER** began to purchase heroin from EJ. **CONNER** was buying heroin on a daily basis from EJ and was getting approximately 1 gram of heroin a day from EJ for approximately $100.00 per gram.

In 2019 **JIMMY EARL CONNER,** who had been working various labor jobs, received a large workman's compensation settlement. **CONNOR** used proceeds from the settlement to purchase a house in Mobile County. In approximately September 2019 EJ moved in as a roommate with **CONNOR** and EJ continued to supply **CONNER** with heroin. EJ then recruited **CONNER** to drive to New Orleans, Louisiana to pick up bulk amounts of heroin for EJ and EJ paid **CONNER** approximately 2 grams of heroin for each trip.

**CONNER** made approximately 8 trips to New Orleans for EJ, starting around January 2020 and each trip **CONNER** would pick up between 12-20 grams of heroin for EJ. On a few occasions **CONNER** drove a rental car provided by EJ and the other times he drove a personal vehicle. On CONNER's last trip to New Orleans on behalf of EJ, **CONNER** was arrested right after he returned to Mobile with the heroin. **CONNER** had approximately 18 grams of EJ's heroin in the vehicle during this arrest on March 12, 2020.  When arrested, **CONNER** was in a rental vehicle that EJ provided for the trip and he had in his possession a flip style cellphone that

2

EJ also provided for the trip in order that **CONNOR** could communicate with the source of supply in New Orleans.

**CONNOR** obtained the heroin from Alex Scott, aka "Black" on the first trip to New Orleans to pick up heroin for EJ.  On this trip, **CONNOR's** girlfriend, SE, accompanied **CONNOR** on the trip and when they met Black, he (Black) got into the back seat of the vehicle and they completed the purchase of heroin for EJ. **CONNOR** has seen Black in Mobile since that first purchase in Louisiana. On one occasion, **CONNOR** was using EJ's cell phone, and Black called and said he was on "D.I.P." (Dauphin Island Parkway) in Mobile. **CONNOR** also met other sources of supply for heroin that EJ had in New Orleans.

**CONNOR** was also aware of another source of supply that EJ had for heroin in Pensacola, Florida but he was never hired to pick up heroin for EJ from this source. **CONNER** also was aware that EJ would hire other people, besides himself, to drive to New Orleans and Pensacola to pick-up the heroin up for EJ.

On approximately five different occasions, while EJ was living with him, **CONNOR** witnessed EJ give heroin to the EJ's girlfriend, the co-defendant, Julisa Dillard. EJ would instruct Dillard to deliver the heroin to his customers. Dillard would deliver the heroin and return with the money the customers paid for the heroin and give it to EJ.

The Unites States and the defendant agree and recommend to the Court that the defendant be held accountable for between 100 and 400 grams of heroin for purposes of relevant conduct in the case.

3

Respectfully submitted,

AGREED TO AND SIGNED.

RICHARD W. MOORE
UNITED STATES ATTORNEY

Date: __February 8, 2021_____

*George F. May*_____
GEORGE F. MAY
Assistant United States Attorney

Date:   February 8, 2021_

/s/ *George A. Martin*
GEORGE A. MARTIN
Assistant United States Attorney
Deputy Chief, Criminal Division

Date: 2- 8- 2021

JIMMY EARL CONNER
Defendant

Date: 2·8-2021.

JUDSON ERIC CRUMP
Attorney for Defendant

4